Four cases, one of them will be submitted today on the Briefs Without Oral Argument, that is Appeal 3273 from 2008, titled Wright v. Department of Veterans Affairs. Three cases are listed for argument. Before we begin, the Court wishes to welcome and thank Judge Richard A. Posner, who is a Circuit Judge on the United States Court of Appeals for the Seventh Circuit, which of course is based in Chicago, where for many years he has also been a professor at the University of Chicago Law School. He sits with us today and tomorrow as a part of our program to have visiting judges from other district and circuit courts around the country. That program started in September of 2007 and is ongoing, but it's been a while since we've had a Circuit Judge, so he's particularly welcome as the first Circuit Visitor to sit with us in about 17 years, although we'll have another Circuit Judge coming shortly as well. We'll call Revolutionary Eyewear v. Aspex Eyewear, Appeal 1267 from 2008. Mr. Trojan, welcome to you. Good morning. Please proceed. Good morning. It pleases the Court. My name is Joseph Trojan, Counsel for the Appellant, Revolution Eyewear. This is an extraordinary case because I hold in my hand a pair of Revolution Eyewear with the auxiliary lens that goes underneath. $55 million in sales of these were found to infringe, even though they're only sold with an auxiliary frame that can only be mounted from underneath. If you attempt to mount it on top as required by the child patent, it is not in register. Anyone can see that no one in the public would ever wear the glasses that way. I thought Claim 22 didn't specify how it was mounted, but just required that it be capable of magnetic mounting. That's correct. It only has to be capable of magnetic mounting, but it must be reasonably capable. The only way that it became capable of being magnetically mounted in a way that's useful to consumers, useful for its intended purpose, is that Contour went and manufactured three auxiliary lenses that it specifically could put on top. In other words, this is a case in which... But the capability has nothing to do with the auxiliary lens under the Claim 22. The capability has to do with what we're calling the primary frame. It's the capability of the primary frame, correct. But it was never sold in that configuration. When you're talking about capability, it's whether the product itself is capable of being modified to be sold in an infringing manner. And the product that in this case was sold in a manner that was specifically found not to be infringing. Yeah, but isn't the issue the capability, not whether as sold it actually infringed? Well, then that would, in effect, the court would need to modify high-tech, the high-tech decision. Let me ask you, what do you think is the invention that the Chow patent embodies? What is it? The invention is the combination of an auxiliary lens mounted on top for stable support. It's the combination of the two. Chow did not... Why is it that the topness... I thought their essential invention was that by putting the magnet in a little protuberance, they weren't weakening the frame by drilling holes in it. It serves no function whatsoever to put magnets into the primary frame if you don't have an auxiliary frame. Wait, you've lost me. But I thought the invention is, obviously, you only need magnets if you're going to have another frame. But I thought the invention was putting those magnets in the little domes rather than having them embedded in the frame. But that's not what the patent teaches. It teaches, it looks to the prior, it was the improvement over the prior art that Chow claimed was that he was stably supporting the auxiliary. Wait a minute, there were two problems he said he was solving. One was the weakened frame problem that Judge Posner is addressing. So your argument must be that the patent only teaches and only describes an invention that solves both purposes stated in the application and that something that is claimed later, as was done here in the reissue patent, that has a claim that only solves one purpose of the two is per se invalid. That has to be your argument, I think. Right? That is correct. Don't we have case law saying that a patent can be perfectly valid if it serves any of the purposes described in the original application? Sure, there's case law that goes both ways. There's case law, but that's why you have to look to the facts of each case. Well, what's the case law that goes the other way? What's the case law that says, because I can't think of one myself, that if four purposes are touted in the application that every embodiment that's claimed has to achieve all four purposes as opposed to less than four? What case holds that? The Cordes Corporation case goes and says that if the two ideas are tied together... Well, then it's really one idea, but obviously in my hypothetical I'm talking about four separate goals. So then you agree if the patent touts four separate goals that a claim is valid if it serves less than the four goals? That's true in the abstract. So you're really saying this is only one goal? This is just one goal. Absolutely. The goal of the CHOW patent is to stably support an auxiliary frame on a primary frame. That's what the title of the patent says it is. Throughout the entire specification, it's a short specification, it only describes top mounting of an auxiliary frame on a primary frame. Well, there's a figure that looks to me like it describes the primary frame separate from any attached auxiliary frame. The fact that one figure exists is not justification for granting a claim to something that's tied to the auxiliary frame. Let me see if I... I'm sorry, were you finished with your answer? Yes. Turning again on to infringement, let me see if I understand the scope of your infringement argument. Suppose that a third-party provider, not contour with the three exemplars, but somebody out there in the market decided to make a top-fitting accessory lens, the dark glass portion, that fit Revolution's primary lens and indeed used a structure that made it fit very firmly and that the glass was indexed properly with the eyepieces of the spectacle then infringe? I believe the third party may be an infringer. Why wouldn't the Revolution? Because it wasn't sold under the factors. I'm talking about infringing claim 22 now, which only references the primary spectacle. This gets into the fact that for something to be, if someone were to actually do that, non-hypothetical, then maybe it would infringe. The fact is that once again we're talking about a hypothetical situation. To me it's an important hypothetical because it tells me something about what your concept of capable of really means. But it's the product itself, this particular, the one I'm holding my hand, Revolution's auxiliary frame is not capable of being modified. But since claim 22 reads only on the primary spectacle frame, it doesn't much matter what Revolution has done as long as that primary spectacle frame is capable of accommodating a top-fitting secondary, correct? Correct. Then you would end up in a situation where anyone, no matter where you put the magnets around here, they could design some strange looking device that would make it capable of infringing. There would be no, you would have literally... What exactly would infringe? Is there any form of auxiliary glasses that when combined with Chow's primary frame infringes? Or is it your view that just the only infringement would be copying that primary frame? Anything you want to attach, but when you make a combination, attaching something to it, that doesn't infringe? If the person who had modified the, sold a product... What about someone who just sells the identical primary frame as the Chow frame, and any kind of auxiliary frame? Well, there's many types of... I don't think every auxiliary frame in the world would create an infringement. What would infringe? It would have to be capable, the thing being sold capable of top-mounting such that, under the Height case, you'd have to go through those factors to look at whether it was sold that way, whether consumers intended to use it that way. Any auxiliary frame that's top-mounted onto Chow's primary frame, that would infringe, is that your view? Well, if it was in register, and it was stably supported on top, then it would be capable of infringing. You confuse me, because when you say it would be capable of infringing, you seem to be referring to the auxiliary lens. But as I understand it, Claim 22, the only claim in issue in this appeal, doesn't say anything about auxiliary frames. It's only talking about the structure of the primary frame. When you keep assigning capabilities to the auxiliary frame, the dark-glass, sunglass-type frame, that seems irrelevant to whether there's an infringement by the primary frame of the limitations of Claim 22. If I could, I'd like to move on to just 30 seconds on the damages issue. This is a case where the best evidence of the royalty rate was Chow's own licensing agreements. Those were submitted, but they redacted their own royalty rates. This is a case where $4.7 million in damages was awarded when, if you do their own calculation of 5% on the $55 million, it comes to $2.7 million. This is a case where they want to say that the factors under Georgia-Pacific should be able to, somehow, the jury may have made adjustments. Yet, they had no economists to go through the Georgia-Pacific factors. Zero. There was no... What's your point? That the lack of a certain kind of economic testimony is per se grounds of reversal of the reasonable royalty award? There at least needs to be someone testifying as to those factors. They're typically... Well, is it your view that it's excessive award or just not adequately presented to the jury? It's both. It's both excessive because it exceeds the amount... Because there was a jury instruction that specifically said it would only be calculated based upon the primary frame sales, and you calculate 5% on the primary frame sales, you come up with $2.7 million. That's clearly excessive. Plus, we argue that there isn't any support. I'd like to reserve the balance of my time. Fair enough. Thank you. Mr. Nicodema, good morning to you. Good morning, Your Honor. Welcome to the court. May it please the court. This is an extraordinary case only in that Revolution copied one of the key features of this patent and sold over $100 million of frames that infringe. Neither of your introductions seem to me to be very helpful. They're sort of very technical issues, and I don't care if it's an extraordinary case or an ordinary case or involves a lot of money or a little bit of money. It seems to, in the end, have no relevance to the issues we have to confront and decide. Help us on the issues we have to decide. Certainly, Your Honor. Revolution seems to rely heavily on this high-tech case. I mentioned it several times in this argument. It doesn't apply. The Intel case applies because Intel had to do with the capability law, that where a claim recites a capability to do something, you only have to show that the accused device is capable. It doesn't matter if it's advertised with that capability. It doesn't matter if consumers ever use it that way. The high-tech case was one of these garden variety claims which said one thing was rotatable around another thing. The claim didn't say Part A is capable of rotating. So all of this stuff in Revolution's reply brief about intent to infringe doesn't matter. But wouldn't capability embrace a case in which a radio receiver could be attached to the glasses? If you don't modify the thing that's being claimed to perform the capability, it infringes. That's my reading of Intel. And the primary frame in this case was not... The implication is vague because they did have to modify...didn't Revolution have to modify the primary frame in order to attach from the bottom? We didn't have to modify the primary frame at all because the magnets also stuck out the top. And they could attract the top-mounting auxiliary frame. That's what the evidence before the district court was. Claim 22 is directed to a primary frame only. No, but theirs is bottom-mounted, right? Their auxiliary frame is bottom-mounted. Yes. But the claim is directed to the primary frame. But didn't they have to modify the primary glasses in order to bottom-mount their auxiliary? Their primary frame? Their auxiliary? No. The modification was in the auxiliary, not the primary. That's correct, Your Honor. The claim is directed to the primary frame, so the issue under Intel is whether... I'm just trying to understand. So, the magnet...when you sell it with the top-mounted, the magnet is attracting something on top, obviously. That's correct. Are you saying that they just...because the magnetic force goes down as well as up, they just stick their auxiliary frame on the bottom? All they did was stick it on the bottom. So, they're using the identical primary frame? Yes, they are. We showed in our briefs that the primary frame that Revolution uses is a copy of the one shown in the patent. It's a copy of the one commercially sold by Aspects. In 2003, I think it's worth noting, Your Honor, that the district... What if instead of attaching glasses to the bottom, they attach some decorative object? It doesn't matter, because the issue is, is the primary frame... Well, I know, but suppose they decide, you know, this is some cosmetic thing. People would like to have bangles, dangling, jangling like earrings from the bottom of their glasses. Yes, Your Honor. And so, they attach a metal thing to the bottom, and the magnet holds it there. Would that be infringement of your patent? Absolutely. Really? If that primary frame was capable without modification... The primary frame is capable of, with its magnets, of holding up anything that isn't too heavy, right? Even if it had nothing to do with dark glasses or vision or anything of that. It was purely decorative. The way the district court construed the claim, Your Honor, the primary frame has to be capable of attaching an auxiliary frame on the top. They could have covered up those magnets on the top. They knew as of 2003... No, but you see, I understand your argument about how they're putting these dark glasses at the bottom, rather than the top, is a trivial difference. I understand that. But physical capability would embrace combinations that had nothing to do with dark glasses, nothing to do with the objective of your invention. It just is an accident that because those are magnets, magnets can attract anything that's metallic. You could have utterly unrelated combinations, and you would treat them as infringements. Well, actually, here, Your Honor, it's not an accident because what... Yes, I know here. I'm curious about whether capability is an entirely physical concept. So anything physically capable of attaching to your magnets, like a radio receiver or something like that, would be embraced by your patent. In my view, Your Honor, capability means the ability to create an apparatus that performs all the requirements of the claim. And that's exactly what they did. I suppose the protection against overbreadth, which would be the problem in the case of the dangling earring-like ornaments, would be under other invalidity issues and would not really be an infringement issue, but would be a validity issue if the capability limitation was so broadly drawn as to provide excessive scope. It would seem to create a problem of obviousness, for example, but maybe also other validity defenses. It may be an invalidity issue, Your Honor. Obviousness was not a part of this case. I know Judge Bryson has a question, but that seems like a good entree to addressing the Court's letter about whether the issues of validity were preserved, if I may do that at this point. Let me ask just a very quick question. I noticed the first line of the patent says, an eyeglass device includes a primary and an auxiliary spectacle frames. And then the preamble for Claim 22 says, an eyeglass device. That's correct. It's true that after comprising, only the primary spectacle frame is called out. That's correct. But why shouldn't we read the preamble, talking about an eyeglass device, consistent with the definition given to eyeglass device early in the specification, and say that this really has to have both components in order to infringe? Because I think you have to look at the patent as a whole and the claims as a whole. Every claim is not drawn to the combination. Where the patentee wanted the claim to be drawn to a combination, he had very specific requirements for the primary frame and very specific requirements for the auxiliary frame. It's very clear. So in Claim 22, presumably, there were no specific requirements for the auxiliary, but that doesn't necessarily mean that the auxiliary isn't necessary to infringement. Well... If we take the patent at its word that eyeglass device means both. There is a functional limitation in Claim 22. It says the primary frame has to be capable of engaging an auxiliary frame. The district court read in that it has to engage it from the top. So Revolution's product, when you look at that capability clause, is capable of doing that. We showed that with the evidence below. But if your inventor believed that his invention was an improvement in the primary frame, then presumably in the language Judge Bryson quotes, he wouldn't have said that the device is the combination. He would have said the device is the primary frame. He did say that. He didn't say the device is the combination. He had a functional requirement there, but he said that it's drawn to the primary frame. Now, if we look at... Now, Judge Bryson, you mentioned that the first column of the patent... No, no, no, but I don't think you're dealing with a point. Okay. The word device is in the claim. That's correct. And the word device is effectively defined early in the application in the language quoted by Judge Bryson to include the combination of the primary frame and the auxiliary frame. And so it might have been logical in the claim construction exercise for the district judge to have given that definition to the word device and to have found that the word device, although in the preamble was a claim limitation, and therefore might have found that there was no infringement. Neither side argued in the district court that the word device was a limitation, that the preamble was a limitation, Your Honor, and Revolution does not argue that on this appeal. I think you have to look at the claim as a whole, and when you do, it's clearly drawn to just a primary frame. Now, if I... Well, the claim is, but the problem is whether the specification adequately supports such a claim. Well, no one really debated what's called out in the claim. Very clearly, what's called out is only the primary frame. Well, as Your Honor mentioned before, there are drawings showing the primary frame alone with all the limitations of Claim 22. The specification recognizes two problems in the prior art, treats them as separate problems. One of those problems is decreased strength. Column two of the patent talks about the solution to that decreased strength problem. It doesn't say it's dependent on the stable support solution. They're two separate and distinct problems. Claim 22 is drawn to that problem. There's even another claim, if I remember, it's Claim 34, which is just drawn to the auxiliary frame. I suppose we can follow that by conceiving of different arrangements that would have clearly promoted only the one purpose or the other. For example, if the stable support goal were being pursued, one way, I assume, would be to just have bigger or stronger magnets in both locations and you'd have more stable support just from that. That would have nothing to do with the strength of the primary frame side piece. Or alternatively, if the goal being addressed was simply to strengthen the side piece of the primary frame, you could have smaller magnets or have them not embedded as was done in this case. So it does seem that you could pursue these two goals or solve these two problems entirely independently of one another. Absolutely. You were going to address, I think, the problem with the appealability of the... Yes. Yes, Your Honor. I didn't read your letter, the court's letter, as inviting a written reply, so I didn't file one. But I'm prepared to answer this now. Now, Revolution relies on this United Technologies case and they quote a portion of it, but they leave out the most critical part. Here's the critical part on page 1344 of the decision. This court held that the threshold issue becomes whether United preserves its res judicata defense for appeal after the denial of summary judgment. A party may preserve an issue for appeal by renewing the issue at trial or by including it in memoranda of law or proposed conclusions of law. Citing a Fifth Circuit case, now this is a procedural issue governed by the regional circuit law, in this case, the Ninth Circuit. As you can see from Revolution's letter and their attachments, they didn't preserve the issue. What they rely on... If it's a pure issue of law, then preservation wouldn't be important, would it? Well, I don't believe it's a pure issue of law, because if you look at the addendum to Revolution's brief, pages ADD 81 and 82, when the district court denied summary judgment on the section 112 written description issue, this is what the court said. As a result, it finds that Revolution has not adduced clear and convincing evidence. They claim 22 fails to satisfy the written description requirement of section 112, paragraph one. Because it is the party that will have the burden of proof on this issue at trial, this motion for summary judgment... Yeah, that's if there are fact issues, but if we thought, for example, that it was unreasonable to interpret, capable to include any kind of attachment that might be made to these magnets, that wouldn't be any factual issue. Well, I think in coming to that conclusion, you're adjudicating facts, Your Honor, because section 112... Look, facts present issues where you want to have evidence, right? If there's no evidence, if it's just a question, is this clear, does this go too far, is this hopelessly vague, then you don't need any evidentiary proceedings. Is it your view that this issue can't be adjudicated by this panel because it's not properly part of this appeal for a want of litigating it at the trial itself? My position, Your Honor, is the revolution did nothing to preserve it. The Ninth Circuit says... Well, it did nothing other than file and litigate the motion. So then the question becomes whether we have any authority to decide the issue under the exact circumstances of what they did do and didn't do. We all agree at trial they did nothing. In summary judgment, they made an attempt. So I'm not clear on what you're saying. Are you saying that we have no authority to decide it or are you saying that it should be deemed as fatally waived and that therefore we should elect not to decide it? The latter, Your Honor. My position is that they waived it by not preserving it, so this court should elect not to decide it. Just one more thing. As to waiver, why shouldn't it be viewed as a litigator's tactical choice? I file a summary judgment motion of invalidity, I lose. Now, I can either try to prove my case at trial with evidence, and then I win or lose, and then we have Jamal, and then the Jamal ruling is subject to appeal. On the other hand, I might choose to simply stop at the denial of my summary judgment motion and take my chances on appeal where I have a much tougher standard of review because now it's no longer de novo review, it's abuse of discretion. So, if I don't litigate it at trial, I'm handicapping myself in terms of the chance to win on appeal, but if I choose to do that, why shouldn't that choice be honored and the denial of summary judgment be deemed to merge into the final judgment that is on appeal? Because I believe you make that election at your peril. Now, I'm looking at it. Why? Which peril? Which peril? The peril of a tougher standard of review or the peril of having the issue not part of the appeal at all? Not part of the appeal because they drop the issue. You didn't make this argument, at least until now, presumably because of our letter. Why shouldn't your present argument be deemed waiver of the contention of waiver? Your Honor, you asked us to respond to a letter. Yeah, but that's part of my question. Is this whole argument before us in as much as you haven't raised it separately? Now, that's not... I don't quarrel with your having given us the wisdom of your thoughts on this, but in terms of adjudicating the issue, isn't there a problem of waiver of waiver? I don't think so, Your Honor. I think the burden of waiver falls on the party that seeks to preserve the issue at trial. And let me ask you... There is a doctrine of waiver of waiver. Let me ask you one other question on this subject if I could. Mr. Trojan has called our attention to an order from May 11th, 2007 in his supplemental submission in which it looks as if the judge, the district judge in this case, has said that the issue of invalidity and I'm paraphrasing, but I think it's at least a reasonable paraphrase, has been decided is out of the case and so is infringement. The only issue left to try is damages. At least that's a reasonable interpretation of that letter. Why wouldn't that be a ground on which a lawyer could legitimately say the judge has conclusively decided invalidity against me, notwithstanding that, as I understand, the previous order on invalidity was the denial of his motion for summary judgment? Because I believe the judge's order denying summary judgment, Your Honor, identified that there was an issue for trial. It said so on the description issue. So she comes out with this minute order saying we're going to try damages. The way I'm reading the United Technology case is that the loser on the summary judgment motion has some affirmative obligation to preserve it for appeal and that wasn't done. All right. We gave you some extra time and so Mr. Kojin, we'll add to your remaining rebuttal time an equivalent amount so you'll have about five and a half minutes. Thank you, Mr. McAdams. Thank you, Your Honor. First, I'd like to address this issue of the magnet being in a pocket to add strength to it and whether you could come up with any design as long as it engaged that pocket. If you look at in the appendix at 4283 to 4298, this is a Japanese patent that's part of the file history of the Chao reissue patent. Contained in that patent is in fact a magnet with a pocket in it. The pocket just so happens to be projected outward from the frame so it's flush with the eyeglasses rather than being perpendicular to it. And so the Chao patent doesn't specify the orientation. It just says that we have this pocket. Well, he didn't invent a pocket for a magnet. That's part of the file history. He did, in fact, invent, like we've been saying, the combination described. What modifications in the primary frame described in Claim 22 did you have to make to attach your auxiliary frame? Well, we didn't modify ours at all because we already... It was just the magnetic... Although their magnetic force was intended to clamp something on top, there's enough magnetic force going down that you just stick your thing under it? That's correct. And in this particular case, there's also, in this particular embodiment, pockets in the bottom that click it into place. So the primary frame is identical to theirs. Is that correct? No. What did you do to the primary frame? You took the arm saw, you took those... Extra arms on their primary frame. We have... Right. We don't... Well, we didn't start with theirs. We have patents on our own invention, so we didn't take their device and modify it. Okay, but how does yours, your primary frame differ from... Well, where the epoxy is on the top, those domes there, those domes do not exist in their case. In their case, you can see the magnets on top and the magnets are oriented so that... Right, you've just covered over the... Right, that's correct. Because your focus is on the bottom, yeah. Is that the only significant difference? That's the patentable distinction between the two. We have something like seven patents on variations of bottom mounting. But the magnetic force pokes through the epoxy, right?  It does poke through. So even this frame, there's some magnetic force. Wouldn't it be your... Wouldn't you think your case greatly strengthened if you'd put so much epoxy on the top that there was no longer magnetic force and then they wouldn't be capable of... A shielding device, a practical shielding device does not exist, to the best of our knowledge. But we wouldn't want to have a rule here that invited shielding devices. Invited... Invited in the sense that you try to avoid infringement by the artificial, useless measure of shielding. That's correct. That's correct. And if we look at... If we were to go... Without significant modifications, their device, their primary frame could support a bottom-mounted frame. Their frame support a bottom-mounted? I'm sorry, their frame. Right. Your frame could support. If you don't shield the top of the magnets, your frame can support a top attached. If we didn't... If you take your primary frame and as long as you haven't actually shielded and prevented the magnetism from going upward, you could put something on it. You could have a top-mounted frame. Correct, but then it's not a practical device because it's not in register with the primary lenses. No one's going to walk around... Well, your secondary is not practical, but one can clearly make one that would be practical. It's just that there isn't one on the market. That's correct. And in fact, if you were to simply say that anyone can modify any modified theoretical auxiliary frame mounted to a primary frame with magnets with pockets, then that would read directly on the prior art. That infringement read can't be correct because it would read on the prior art even cited against the patent. As far as the suggestion that the court had that eyeglass device should be a term interpreted because it clearly includes both primary and auxiliary frame, that is an issue de novo. Well, but it may be de novo in terms of standard of review, but it isn't something we can raise in the first instance if you haven't argued. There's a difference between those two. De novo is a standard review of argued issues. Correct. It doesn't mean that we can reach out and make an argument that you haven't made. I take it you didn't make that argument either in the district court. You certainly haven't made it here, right? I believe that it may have been made in oral argument. Before the district judge? Before the district court. No, you haven't made it in your briefs here, right? Not in the briefs here. That's correct. All right. Thank you. We thank you both. We'll take the case under advisement.